```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
             Plaintiff,          )
                                 )
     v.                          )     No. 4:07 CR 639 JCH
                                 )                      DDN
BRUCE WILEY,                     )
                                 )
             Defendant.          )
```

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on December 18, 2007.

Defendant Bruce Wiley has moved to suppress statements (oral motion Doc. 11 and Doc. 15); and the government has moved for a pretrial determination of the admissibility of defendant's statement (Doc. 8 and oral motion Doc. 13).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On July 24, 2007, St. Louis County Police Detective Matt Brillos obtained a search warrant from the Circuit Court of St. Louis County for the single family residence at 207 Bascom in St. Louis County, Missouri, to seize electronic materials to search for child pornography. Gov. Ex. 1.

2. Officers executed the warrant at 7:07 p.m. on July 25. Entry was made into the residence by approximately 10 officers of the St. Louis County Tactical Operations Unit. These officers entered with their weapons drawn and with tactical commotion. They went into Wiley's bedroom where he was sleeping. He was then working the night shift. He had gotten off work at 7:00 a.m. that day and had laid down to sleep at 1:00 p.m. The officers took him out of the bedroom. Approximately

ten minutes later, as soon as the Tactical Operations Unit determined that the premises were secure, those officers withdrew and Det. Brillos and other investigating officers entered the residence.

3. When the officers entered the residence, the only other persons present were defendant Bruce Wiley and his parents. Det. Brillos found Wiley in the kitchen where he had been handcuffed by the Tactical Operations Officers. Det. Brillos immediately uncuffed Wiley and identified himself. He told Wiley that he had a search warrant to search for child pornography. He then orally advised Wiley of his constitutional rights to remain silent and to counsel. Det. Brillos asked Wiley whether he understood his rights and Wiley answered in the affirmative and said he would waive them and speak with the officer. At that time, Det. Brillos asked Wiley questions about his identity and place of residence, which he answered.

4. After approximately an hour, Det. Brillos asked Wiley whether he would go to the police station for an interview and Wiley said he would do so. The officer then handcuffed Wiley, because he knew Wiley was a convicted sex offender. Det. Brillos told Wiley that the handcuffing was for the officer's safety and that he was not being placed under arrest. Brillos put Wiley in the front seat of a police vehicle and drove to the St. Louis County Police Headquarters in Clayton.

5. Det. Brillos and Wiley arrived at the police station, Det. Brillos took Wiley to an interview room, where the interview began about 7:59 p.m. Brillos then handed Wiley a written form, captioned "Warning & Waiver Form," Government Exhibit 2. The officer asked Wiley how far he had gone in school, and Wiley said he had gotten to the eighth grade and had obtained a General Equivalency Diploma. Det. Brillos had Wiley read the form and asked Wiley to place his initials in front of each statement of a right. Wiley did so and then signed his name at 8:02 p.m., after reading the printed statement, thereby indicating that he had read his rights, understood them, was willing to make a statement and answer questions, did not want a lawyer at that time, and knew what he was doing. The printed statement also stated that no promises or

threats or pressure or coercion of any kind were used against him.  Det. Brillos signed the form as a witness.  Gov. Ex. 2.

6. Thereafter, Det. Brillos asked Wiley many questions, which Wiley answered and discussed with the officer.  The interview lasted approximately three and one-half hours.[1]  During the first part of the interview, Wiley became uncomfortable due to a painful toe.  In response, Det. Brillos allowed defendant to take his shoe off to relieve the discomfort.  The interview was carried on like a conversation, with both the officer and Wiley explaining information.  On one occasion, after approximately 40 minutes, Wiley stated to Det. Brillos that he was becoming very afraid.  Gov. 4A at 33-34.  The officer appeared to put Wiley at ease and continued questioning him and Wiley continued answering the questions without objection.  During the interview, occasionally Wiley attempted to interrupt the officer, in an apparent effort to direct the content of the question, before the officer completed the statement or question.  Usually, Det. Brillos was able to continue with his train of thought and finish the question.

7. Several breaks were taken during the lengthy interview.  The first one occurred after approximately one hour.  Wiley indicated that he had to relieve himself and both men took a break and obtained fresh coffee.  Gov. Ex. 4A at 51.  The second interview session began around 9:02 p.m.  At that time, Det. Brillos reminded Wiley generally of his <u>Miranda</u> rights and asked him whether he still wanted to talk to the officer.  Wiley answered in the affirmative.  During the second part of the interview Det. Brillos explained to Wiley the general basis for the search warrant.  When Wiley began to explain something, Brillos would allow Wiley to finish his thought.  Also, occasionally Wiley and Brillos spoke over each other.  Approximately two-thirds of the way through the second interview session, Wiley asked the officer how much trouble he was going to get in on account of having child pornography on his computer.  Det. Brillos responded that the prosecutor will be pleased

---

[1]The interview was audio-recorded, Government Exhibit 3 (compact disk), and a five-part transcript was prepared from the recording, Government Exhibits 4A-4E.  The undersigned has listened to the audio record and reviewed the written transcript.

with someone like Wiley who is providing truthful information. Gov. Ex. 4B at 20, 23. The second session broke for a break after approximately 45 minutes. During the break Wiley and Brillos had an opportunity to get coffee. At the beginning of the third session, Det. Brillos generally reminded Wiley of his rights. Wiley repeated that he was then afraid because he has a criminal sexual offense record, went through therapy, did not want to go to jail, and wanted the officer's understanding and leniency. Det. Brillos responded that he did not have the ability to give Wiley leniency, but that he did understand him. Brillos then discussed with Wiley that merely viewing child pornography on the computer was illegal, which Wiley said he did not know. Gov. Ex. 4C at 1-4. The fourth session of the interview began at 10:40 p.m. and began with fresh coffee being provided to Wiley and Wiley confirming that he still had his Miranda rights. Gov. Ex. 4D at 1. Thereafter, Det. Brillos showed Wiley on a computer screen four videos of child pornography that were taken from Wiley's computer. Then, after a short exchange, they watched portions of video scenes. After the videos were displayed and Wiley spoke about them, he told the officer that he was scared and he discussed his circumstances and his desire not to go to jail. Det. Brillos did not discuss leniency or punishment. Id. at 12. The fourth session of the interview ended at 11:07 p.m. Id. at 22. Shortly thereafter the fifth and last session of the interview began with Det. Brillos reminding Wiley of his Miranda rights which Wiley acknowledged. Midway through the last session, Det. Brillos stated he knew that Wiley was getting tired. Gov. Ex. 4E at 13. Wiley did not respond to this statement. Id. At the close of the final session, at 11:39 p.m., Det. Brillos told Wiley that he was being arrested at that time, because he had said that he had illegally downloaded child pornography onto his computers. Id. at 27. 8. Throughout the lengthy interview, Det. Brillos and Wiley engaged in often lengthy conversational exchanges, in which the officer asked questions and made explanations, and Wiley answered questions and made explanations. At no time on July 25, 2007, at his residence or at the police station, did any police officer get Wiley to cooperate or answer questions by threatening him, making him any promise of leniency, or engaging in any

- 4 -

coercive activity. At no time was Wiley's will or ability to not cooperate or to remain silent overborne by any action of the police.

## DISCUSSION

Defendant argues that his statements[2] to the police on July 25, 2007, should be suppressed because (1) he was not advised of his Miranda[3] rights at the house, which led to the statements at the police station; and (2) his statements were not voluntary, because he had not had adequate sleep before the interviews, he was intoxicated, and the questions were leading in that they suggested the information he should give the police.

The government has the burden of establishing the constitutional admissibility of a defendant's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The admissibility of a defendant's statements depends upon whether the statements are constitutionally voluntary, Connelly, 479 U.S. at 163-67; and, when the statements are made during police interrogation while the defendant was in custody, whether the defendant had been advised of his Miranda rights, and, if so, whether the defendant knowingly and voluntarily waived the rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979). The admissibility of statements does not require that they be preceded by an advise of rights, if the person who made the statements was not in custody or not the subject of interrogation when the statements were made. Miranda, 384 U.S. at 444-45, 467-68, 478.

Statements are constitutionally involuntary if they are the result of government overreaching, such as physical mental or physical coercion, deception, or intimidation. Connelly, 479 U.S. at 167; Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Jordan, 150 F.3d

---

[2]Defendant is not challenging the seizure of any physical evidence by the police, in the execution of the search warrant or otherwise. The only evidence being challenged are the statements that defendant made to Det. Brillos.

[3]Miranda v. Arizona, 384 U.S. 436, 444, 478-79 (1966).

895, 898 (8th Cir. 1998); <u>United States v. Goudreau</u>, 854 F.2d 1097, 1099 (8th Cir. 1988).

While the mental condition of the defendant being interrogated is relevant to whether a statement was voluntary, a statements is not constitutionally involuntary without improper government action. <u>See</u> <u>Connelly</u>, 479 U.S. at 164-66. "Coercive official activity is a necessary predicate to a finding that a statement is not voluntary." <u>Goudreau</u>, 854 F.2d at 1099. The purpose of excluding evidence seized in violation of the Constitution is to deter future constitutional violations. <u>Connelly</u>, 479 U.S. at 166. Suppressing statements made in the absence of government coercion does not protect constitutional guarantees or deter future constitutional violations. <u>Id.</u> The defendant therefore has no constitutional right to confess only when totally rational and properly motivated. <u>Id.</u>

The motion to suppress should be denied. Defendant's first argument, that he was not advised of his <u>Miranda</u> rights before being interrogated, fails as a matter of fact. Defendant was advised of his constitutional rights to remain silent and to counsel orally at his home and orally and in writing at the police station, each time before Det. Brillos interrogated defendant. On each occasion defendant said he understood his rights. In the residence he orally waived his rights and at the police station he did so in writing.

Defendant's oral statements to Det. Brillos at the residence and at the police station were voluntary. At no time was defendant's will and ability to not cooperate or to refuse to answer questions overborne. For the most part, when defendant spoke, Det. Brillos listened to what he had to say. Occasionally, Det. Brillos cut off defendant's statements to redirect them to the topics at hand. At no time did the officer prevent defendant from invoking his right to remain silent or to counsel.

Defendant argues that his statements were the products of his being deprived of sleep, his intoxication, and the officer's leading questions. These arguments are without merit.

As stated above, while the mental condition of the person being interrogated is relevant to the voluntariness of a statement, the court

will not find a statement involuntary unless there was government action that overbore the person's will and ability to remain silent. In <u>Colorado v. Connelly</u>, this was so even with a defendant who was suffering from chronic schizophrenia and may have been in a psychotic state when the gave the statements. 479 U.S. at 161. In the case at bar, while defendant on several occasions stated that he was sleepy, which the officer acknowledged, he nevertheless answered questions completely and coherently. He never asked for the interview to stop because he was sleepy. He was provided coffee on at least two occasions. There were breaks between the five sessions of the interview. The questions by the officer, although frequently leading, were not such as to prevent defendant from disagreeing with him. Frequently both men engaged in lengthy discussions about the topic at hand.

For these reasons,

**IT IS HEREBY ORDERED** that the motions of the government for a pretrial determination of the admissibility of defendant's statement (Doc. 8 and oral motion Doc. 13) are denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress statements (oral motion Doc. 11 and Doc. 15) be denied.

The parties are advised they have ten days in which to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing March 10, 2008, at 9:00 a.m.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 15, 2008.